IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

JESSE ROBERSON, :
:
    Plaintiff, :
:
vs. : Civil Action No.
: **7:05-CV-23 (RLH)**
JO ANNE B. BARNHART, :
Commissioner of Social Security, :
:
    Defendant. :

**ORDER**

The plaintiff herein filed an application for a period of disability and Disability Insurance benefits on August 5, 2002; this application was denied initially and upon reconsideration, and the plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on May 5, 2004. In a decision dated October 26, 2004, the ALJ denied plaintiff's claim. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted. Both parties have consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to the ordering of the entry of judgment. The parties may appeal from this judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the

Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984).

Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience.  20 C.F.R. § 404.1520(d).

The ALJ concluded that plaintiff had "severe" impairments of degenerative disc disease of the cervical and lumbar spine; status post cervical discectomy and fusion; and status post right femur and ankle fractures with surgical repair and residual neck, back, leg and arm pain, but that he was not disabled.  The ALJ concluded that plaintiff retained the residual functional capacity to perform a reduced range of light work

*Credibility*

Plaintiff states the ALJ erred in concluding that his subjective complaints of disabling symptoms were not credible to the extent alleged.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.  Foote v. Chater, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability.  Holt v. Sullivan, supra at page 1223;  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action.  When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision."  Caulder v. Bowen, 791 F.2d 872, 880 (11th Cir.1986).

In January 2002, a MRI scan of the lumbar spine showed there was mild disc space narrowing and minimal diffuse disc bulge (Tr. 160).  No significant disc bulge or herniation was identified (Tr. 160). A MRI scan of the cervical spine showed a small left-sided disc herniation (Tr. 161). In January 2002, Dr. James Goss noted that on general testing, plaintiff had normal DTR's and no signs of sciatica and no real radiating pains (Tr. 164). Dr. Goss noted that plaintiff was primarily sore in the posterior parts of the cervical and lumbar spine and that plaintiff's symptoms seemed be entirely mechanical (Tr. 164). In February 2002, Dr. Goss reported that clinically plaintiff's back and neck "tests out and neurologically he's clear."(Tr. 163). Dr. Gross found "no objective changes whatsoever" (Tr. 163).

Plaintiff began treatment with Dr. Joseph Thomas in February 2000 (Tr. 172). Plaintiff saw Dr. Thomas again in December 2001, March 2002, and May 2002 (Tr. 167-69). In July 2002, plaintiff presented to Dr. Joseph Thomas for an evaluation (Tr. 166). Dr. Thomas diagnosed plaintiff with hypertension and degenerative disc disease of the spine, and gastroesophageal reflux disease (Tr. 166). Dr. Thomas prescribed some medications and advised plaintiff to lose

weight and follow a low salt diet (Tr. 166). Notably Dr. Thomas did not indicate that plaintiff was disabled or unable to work (Tr. 166-72).

In February 2003, plaintiff was involved in another motor vehicle accident (Tr. 207). After being in the hospital several days, plaintiff was transferred to the rehabilitation unit on February 13, 2003 (Tr. 208). Upon examination, plaintiff's cranial nerve examination showed no abnormalities (Tr. 208). His motor examination showed good strength in both the upper and lower extremities with the exception of the right leg where there was a decreased effort (Tr. 208).

Plaintiff's sensory examination showed no gross abnormalities (Tr. 208). Plaintiff's station and gait were also normal (Tr. 208). However, it was noted that plaintiff had an obvious deformity of the right leg (Tr. 222).

In November 2003, Dr. John Dorchak examined plaintiff and found he had slight restriction of range of motion of the cervical spine with difficulty with extension (Tr. 233). Plaintiff had a normal motor and sensory examination in both upper extremities (Tr. 233). Plaintiff also had a normal reflex examination in both upper extremities and in his left leg, but his right leg was difficult to examine due to his use of a cam walker (Tr. 233). In December 2003, Dr. Dorchak examined Plaintiff and noted that the CT scan showed evidence of some disc bulges but no significant disc herniation and no significant neurocompressive disease (Tr. 232). Dr. Dorchak explained that plaintiff did not have a surgically treatable condition in his lower back (Tr. 232). Dr. Dorchak opined that plaintiff was at maximum medical improvement and had a zero percent permanent physical impairment (Tr. 232). In February 2004, Dr. Dorchak reported that the findings of plaintiff's MRI and myelogram showed he did not have a surgically treatable

condition in his lower back (Tr. 261). Plaintiff's MRI of the lumbosacral spine was normal and his lumbar myelogram/CT showed no signs of a disc herniation or significant nerve compression (Tr. 261). Dr. Dorchak opined that plaintiff should be treated conservatively with a home exercise program, over-the counter anti-inflammatory medications, and activity modification (Tr. 261).

On March 15, 2004, Dr. Dorchak reported that plaintiff's neurological examination was intact and his straight leg raising was negative (Tr. 260). He advised plaintiff to follow-up with Dr. Starling for treatment of his leg problem as he did not feel plaintiff would benefit from surgical intervention with respect to his lower back condition (Tr. 260). On April 21, 2004, Dr. Dorchak reiterated his decision to continue with conservative management of plaintiff's chronic lower back pain (Tr. 259). Dr. Dorchak opined that plaintiff was not capable of gainful employment due to his right leg injury (Tr. 259).

In May 2003, Dr. C. Curt Starling reported plaintiff was able to extend his knee fully and had only mild crepitation in the knee (Tr. 241). Dr. Starling advised plaintiff to try to progressively do more and more weight-bearing on the right lower extremity and continue his therapy for strengthening the knee and ankle (Tr. 241). Dr. Starling noted that plaintiff had some swelling around the ankle and some decreased range of motion of the ankle, which was to be expected (Tr. 241). Dr. Starling warned plaintiff that he would probably have residual pain and disability in the ankle due to the nature of his injury (Tr. 241). Dr. Starling advised that the rod was probably irritating the knee and that the rod could be removed six months after his surgery (Tr. 241). In September 2003, which was the last medical notation from Dr. Starling, Dr. Starling advised that removal of the rod might be beneficial and may or may not relieve

some of his pain (Tr. 237). However, plaintiff did not want to proceed with removal of the rod (Tr. 237).

The ALJ rejected plaintiff's testimony as being inconsistent with the weight of the medical evidence and was not wholly credible, specifically noting that the record did not contain a prescription for his cane and the medical evidence did not mention that he needed lumbar surgery or show that he had told his doctors that his pain kept him from sleeping. (Tr. 16).

Plaintiff states that although he was unable to produce the prescription for the cane, he points to evidence in the record that shows he required an assistance device. On February 13, 2003, south Georgia Medical Center records state that plaintiff will need to learn how to walk with either canes or walker. (Tr. 209). Dr. Starling noted in September of 2003 that plaintiff continued to be only partially weight bearing using a boot and crutches. (Tr. 237).

Additionally, plaintiff states that records were submitted to the ALJ after the hearing showing that a lumbar fusion for plaintiff's back had been discussed by Dr. Dorchak on April 21, 2004. However, the records were not included in the record, and were again submitted to the Appeals Council. (Tr. 267).

Finally, plaintiff states that the fact that none of the doctors specifically wrote about plaintiff's difficulty sleeping because of pain does not mean that plaintiff did not discuss it with them, and consequently the use of this by the ALJ to discount plaintiff's testimony as not wholly credible was error.

The Commissioner states that the ALJ found other reasons in the record to discount plaintiff's complaints of disabling pain. The Commissioner may be correct that the medical records do not support a finding of disability. However, the ALJ did not specify what weight he accorded the

7

other evidence. Instead, the ALJ pointed out these three points alone as supportive of the conclusion that plaintiff's testimony was not fully credible.

While the undersigned may not re-weigh the evidence, it does not appear that the ALJ's reliance upon these three factors was factually correct, and thus they do not provide substantial evidence to support the ALJ's decision.

Upon remand, the ALJ should reassess plaintiff's credibility in light of the above.

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is the ORDER of the undersigned that the Commissioner's decision be **REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration.

**SO ORDERED**, this 28th day of March, 2006.

                                                    //S Richard L. Hodge
                                                    RICHARD L. HODGE
                                                    UNITED STATES MAGISTRATE JUDGE

msd